UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – X

KATIE CHURCH, JOSH DOLAN, DINA GINZBURG, TAIM ISREB, BARBARA TAAM, and MILTON TAAM, individually and on behalf of all others similarly situated,

Plaintiffs and Proposed Class. Representatives,

-against-

3:26-cv-381-ECC-MJK

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO CAUSE AS TO WHY AN INJUNCTION SHOULD NOT ISSUE

CORNELL UNIVERSITY; CORNELL UNIVERSITY POLICE DEPARTMENT; MICHAEL KOTLIKOFF, in his individual and official capacities as President of Cornell University; KRISTIN C. HOPKINS, in her individual and official capacities; LIEUTENANT MICHAEL SCOTT, in his individual and official capacities; SERGEANT KYLE SANDY, in his individual and official capacities; OFFICER WILLIAM D. CARPENTER, in his individual and official capacities; OFFICER SCOTT R. GRANTZ, in his individual and official capacities; OFFICER BEVERLY VAN CLEEF in her individual and official capacities; OFFICER BRYANT WYANS in his individual and official capacities; OFFICER JOSEPH CANZANO in his individual and official capacities; and JOHN and JANE DOES 1–20,

– – – – – – – – – – – – – – – – – – – – – – – – – X

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES............................................................................................iv

PRELIMINARY STATEMENT.......................................................................................1

BACKGROUND ..............................................................................................................3

    A.    Mr. Taam's March 10, 2025 Arrest and First PNG ...............................................3

    B.    The Complaint Alleges That the March 10, 2025 Arrest Was Part of a Broader
        Viewpoint-Based Enforcement Operation ...........................................................4

    C.    The April 30, 2026 Incident ................................................................................5

    D.    Cornell Issued a New PNG After the April 30, 2026 Incident............................6

    E.    Cornell's Public Response Credited President Kotlikoff's Account While
        Failing to Meaningfully Address His Own Conduct............................................6

    F.    Cornell Faculty and Campus Organizations Criticized the Board's Process.......9

    G.    Mr. Taam Asked Cornell to Rescind the April 30 PNG......................................10

    H.    Cornell Refused to Withdraw the Ban and Reissued the PNG on May 20..........12

    I.    The PNG Will Exclude Mr. Taam From Cornell's 2026 Reunion ......................13

ARGUMENT....................................................................................................................14

    I.    LEGAL STANDARD ..........................................................................................14

    II.    THE REQUESTED RELIEF IS PROPERLY BEFORE THIS COURT.............15

    III.    MR. TAAM RAISES A SERIOUS QUESTION GOING TO THE MERITS
         AND IS LIKELY TO SUCCEED ON HIS FIRST AMENDMENT
         RETALIATION CLAIM .....................................................................................16

        A.  Mr. Taam Engaged in Protected Activity .......................................................16

        B.  The Challenged PNG Is an Adverse Action That Would Chill a Person of
            Ordinary Firmness .......................................................................................18

        C.  The Record Strongly Supports Retaliatory Motive .......................................18

    IV.    MR. TAAM IS LIKELY TO SUFFER IRREPARABLE HARM
         ABSENTEMERGENCY RELIEF.......................................................................22

    V.    THE BALANCE OF EQUITIES TIPS SHARPLY IN MR. TAAM'S FAVOR .23

VI.     THE PUBLIC INTEREST SUPPORTS EMERGENCY RELIEF ......................24

VII.    THE REQUESTED RELIEF IS NARROW AND PROPER ............................24

CONCLUSION ................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Bronx Household of Faith v. Bd. of Educ*,
 331 F.3d 342 (2d Cir. 2003) ......................................................................................15

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30 (2d Cir. 2010) ....................................................................................14, 15

*Curley v. Village of Suffern*,
 268 F.3d 65 (2d Cir. 2001) ........................................................................................16

*Davis v. Goord*,
 320 F.3d 346 (2d Cir. 2003) ......................................................................................16

*Dongguk Univ. v. Yale Univ.*,
 734 F.3d 113 (2013) ..................................................................................................17

*Dorsett v. County of Nassau*,
 732 F.3d 157 (2d Cir. 2013) ......................................................................................16

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
 282 F.3d 83 (2002)......................................................................................................17

*Elrod v. Burns*,
 427 U.S. 347 (1976)..............................................................................................15, 23

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.,*
 597 F.2d 814 (2d Cir. 1979) ......................................................................................15

*Mount Healthy City School District Board of Education v. Doyle,*
 429 U.S. 274 (1977)....................................................................................................16

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.,*
    769 F.3d 105 (2d Cir. 2014) ...............................................................................................15

*Rupp v. City of Buffalo,*
    91 F.4th 623 (2024)..............................................................................................................17

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008)..................................................................................................................14

**PRELIMINARY STATEMENT**

This emergency motion arises from Cornell's continuing use of campus-wide exclusion orders to punish pro-Palestinian expression and suppress critics of university leadership.

Plaintiff Milton Taam is a Cornell graduate and a named plaintiff in this civil-rights action. On March 10, 2025, Cornell University and the Cornell University Police Department ("CUPD") arrested him at the "Pathways to Peace" event after he made a brief political statement criticizing Israel's treatment of Gaza. Compl. ¶¶ 22, 130–138. CUPD also issued him a Persona Non Grata notice ("PNG") barring him from campus for one year. Although the Tompkins County District Attorney moved to dismiss all charges against Mr. Taam for lack of evidence, CUPD did not rescind the PNG. Compl. ¶¶ 136–138.

More than a year later, on April 30, 2026, while this lawsuit was pending, Mr. Taam witnessed and documented a public incident involving President Michael Kotlikoff's vehicle driving into a Cornell student and driving over the foot of a recent graduate after another campus event concerning the Israel/Palestine conflict. Taam Decl. ¶¶ 31–39. Cornell then issued Mr. Taam a new PNG, again barring him from Cornell property, this time for three years. Taam Decl. ¶¶ 4, 50–51; Taam Decl. Ex. 4. Mr. Taam asked Cornell to rescind that April 30 PNG, explaining that he had engaged in no violence, threats, obstruction, trespass, or unlawful conduct. Taam Decl. ¶¶ 53–57; Taam Decl. Exs. 5, 7. Cornell refused to withdraw the ban. Instead, on May 20, 2026, it purported to rescind and reissue the PNG with added detail but no change in scope or duration. Taam Decl. ¶¶ 61–63; Taam Decl. Ex. 11. This memorandum refers to that order as the "challenged PNG."

The timing and context support a strong inference of retaliation and pretext. The new PNG targets Taam, a named plaintiff, Cornell alum, and critic of Cornell's treatment of pro-

Palestinian expression. It arises from an incident involving President Kotlikoff personally—the same official alleged in the Complaint to have unlawfully colluded with Cornell University Police Department to falsely arrest Taam and others who appeared critical of Israel without case on March 10. Compl. ¶¶ 13, 34–35, 149–155. And after the Tompkins County District Attorney separately determined that the April 30 incident warranted no criminal charges, CUPD and Cornell nonetheless refused to rescind the 2025 PNG and after it expired, now attempt to continue the campus-wide ban without cause by reissuing a three year PNG without cause. Taam Decl. ¶ 49; Taam Decl. Ex. 8.

Emergency relief is necessary because the 2026 Cornell Reunion begins on June 4, 2026, and runs through June 7, 2026. Mr. Taam planned to attend with his wife, daughter, son-in-law, and granddaughter. His wife and daughter are also Cornell graduates. Unless this Court intervenes, the challenged PNG will exclude Mr. Taam from a time-sensitive family and alumni event, chill his protected speech and association, and continue the same viewpoint-based exclusion this lawsuit challenges. Taam Decl. ¶¶ 87–89.

The Complaint already pleads a First Amendment claim for viewpoint discrimination and retaliatory arrest, and it seeks injunctive relief prohibiting Defendants from retaliating against students, faculty, or community members for exercising First Amendment rights in connection with Gaza or Palestine. Compl. ¶¶ 182–191; Compl., Prayer for Relief ¶ g. The challenged PNG is a continuation and escalation of that same retaliatory course of conduct. To the extent Defendants contend that the challenged PNG must be pleaded separately, Mr. Taam will seek leave to supplement the Complaint under Rule 15(d).

The requested relief is narrow. Mr. Taam does not seek immunity from generally applicable rules. He seeks only to prevent Cornell from enforcing a retaliatory campus ban while

2

this Court determines whether the challenged PNG is lawful. The Court should temporarily restrain enforcement of that PNG and order Defendants to show cause why a preliminary injunction should not be issued.

Defendant's counsel is aware this motion is forthcoming and opposes it. The parties have been emailing since May 27, 2026 and cannot come to a resolution without court intervention.

## BACKGROUND

### A. Mr. Taam's March 10, 2025 Arrest and First PNG

Plaintiff Milton Taam is a Cornell graduate. On March 10, 2025, he attended Cornell's "Pathways to Peace" event at Bailey Hall as a member of the Cornell community. Taam Decl. ¶¶ 1, 3; Compl. ¶¶ 22, 130.

During the event, when panelist Tzipi Livni spoke about Gaza, Mr. Taam stated from the audience: "you turned it into a prison." A CUPD officer approached, initially appeared to identify the wrong person, and then gestured for Mr. Taam to stand after another audience member pointed him out. Mr. Taam promptly complied. Compl. ¶¶ 130–133.

In the lobby, Mr. Taam was informed that he was being arrested for disorderly conduct. Officer Scott R. Grantz processed the arrest even though he had not witnessed any disorderly conduct. At Mr. Taam's first court appearance, the Tompkins County District Attorney moved to dismiss all charges for lack of evidence. The court granted the motion, and the charges were dismissed outright rather than resolved through an adjournment in contemplation of dismissal. Compl. ¶¶ 134–136.

Despite the dismissal of the charges, CUPD did not rescind the March 10, 2025, PNG it issued to Mr. Taam. Compl. ¶ 137. As a result, Mr. Taam remained barred from Cornell

University property for one year. The first PNG expired on or about March 10, 2026. Taam Decl. ¶ 73.

**B.  The Complaint Alleges That the March 10, 2025 Arrest Was Part of a Broader Viewpoint-Based Enforcement Operation**

Mr. Taam and several others filed a federal lawsuit against the CUPD, Cornell University and multiple individuals including President Kotlikoff on or about March 10, 2025. The Complaint alleges that Mr. Taam's March 10, 2025 arrest was part of a broader viewpoint-discriminatory enforcement operation directed at people expressing support for Palstinian rights. Compl. ¶¶ 10–14, 45–52, 182–191; Taam Decl. ¶¶ 70–77.

Before the event, CUPD officers identified audience members wearing keffiyehs and similar markers of perceived Palestinian identity or political expression as people to "look out for." Body-worn camera footage quoted in the Complaint captures one officer putting on gloves while laughing and saying: "When these come out, what does that mean, Bill? It means 'fuck around and find out.'" Compl. ¶¶ 12, 62.

The Complaint also alleges direct involvement by Cornell senior administration. After several arrests had taken place, Defendant Kristin Hopkins, Chief Administrator to the President and Provost, and the Cornell official in charge of the event, entered the corridor and spoke with Lieutenant Michael Scott. According to the Complaint, Ms. Hopkins asked how many people had been arrested. When Lieutenant Scott responded that approximately six to eight people had been arrested, Ms. Hopkins replied: "Okay, Mike's asking . . . he was just hoping the number would be more." The Complaint alleges that "Mike" referred to President Michael Kotlikoff. Compl. ¶¶ 13, 34–35, 149–155; Taam Decl. ¶ 72.

In response, Lieutenant Scott and another officer discussed whether there were additional people who could be arrested, including a woman who the officer alleged had been filming

4

arrests outside the auditorium as if that was arrestable behavior. The Complaint alleges that CUPD ultimately arrested at least seventeen people in connection with the March 10 event, including Taam. Compl. ¶¶ 151–155.

### C. The April 30, 2026 Incident

On April 30, 2026, while this lawsuit was pending, Mr. Taam and his wife attended a public debate at Cornell University concerning the Israel/Palestine conflict. President Kotlikoff attended and gave introductory remarks. Earlier that evening, Mr. Taam's wife gave President Kotlikoff a copy of their book, *Palestine - People, Land, and Solidarity: With Our Own Eyes 1977, 2009, Today*, which President Kotlikoff accepted and later carried to his car. Taam Decl. ¶¶ 6–16.

After the event, Mr. Taam observed students engaging President Kotlikoff in dialogue about student arrests, suspensions, free speech, and repression on campus. Mr. Taam states that he primarily observed the conversation, that he did not know the students, and that nothing he witnessed supported President Kotlikoff's public claim that anyone accosted him or shouted at him. Taam Decl. ¶¶ 17–28. President Kotlikoff and the students continued what Taam observed as a respectful dialogue as they walked out of the building and into the parking lot, at which point Mr. Taam began to leave to find his wife. Id.

Mr. Taam then saw what appeared to be President Kotlikoff's vehicle backing into pedestrians. He heard students shout that President Kotlikoff had hit them, and he observed that one student's foot had been run over.  Mr. Taam was not standing with the students at that point. Concerned for the students' safety, Mr. Taam approached the driver-side window and knocked on it to alert President Kotlikoff. When President Kotlikoff did not open the window,  he moved in front of the car to photograph and document the situation. Mr. Taam alleges that he was not

5

blocking President Kotlikoff's exit, and that when the vehicle appeared to move toward him nonetheless, Mr. Taam moved aside because he feared for his safety. Taam Decl. ¶¶ 31–39.

Mr. Taam did not engage in violence, threats, property damage, or unlawful conduct. He was not charged with any offense arising from the April 30 incident. Taam Decl. ¶¶ 47–49.

### D. Cornell Issued a New PNG After the April 30, 2026, Incident

After the April 30, 2026, incident, Cornell issued Mr. Taam a new PNG barring him from Cornell property for three years. Taam Decl. ¶¶ 4, 50–51; Taam Decl. Exs. 3–4. The reason for the PNG was listed as "Trespass on Cornell University Property, Day Hall Parking Lot." Taam Decl. ¶¶ 50–51; Taam Decl. Ex. 4. The parking lot is open to the public and Mr. Taam was not asked to leave and did not trespass at any time. Taam Decl. ¶ 50. Footage of the incident is also publicly available and the Tompkins County District Attorney declined to press any charges against Mr. Taam or any other individual who witnessed or was impacted by the incident. Taam Decl. ¶ 49; Taam Decl. Ex. 8.)

The April 30 PNG was issued while this lawsuit was pending, after Mr. Taam had already challenged Cornell and CUPD's prior use of arrests and PNGs to punish pro-Palestinian expression. It was also issued in connection with an incident involving President Kotlikoff personally — the same official alleged in the Complaint to have monitored the March 10 arrest operation and hoped for more arrests. Compl. ¶¶ 13, 34–35, 149–155; Taam Decl. ¶ 72.

### E. Cornell's Public Response Credited President Kotlikoff's Account While Failing to Meaningfully Address His Own Conduct.

On May 1, 2026, the day after the April 30, 2026, incident, President Kotlikoff used Cornell's official communications system to send a public statement to the Cornell community titled "Harassment and intimidation incident at Day Hall." Gibson Decl. Ex. A; Taam Decl. ¶¶

6

40–42. In that statement, he characterized the incident as harassment and intimidation directed at him. He also accused the individuals involved of conduct inconsistent with legitimate protest before any independent adjudication and before the Tompkins County District Attorney determined whether criminal charges were warranted. That same day, Cornell Vice President Kyle Kimball posted a statement entitled "Video of Harassment and intimidation incident at Day Hall" which included what appeared to be security footage of the Day Hall parking lot. Taam Decl. ¶ 42; Taam Decl. ¶ 42; Gibson Decl. Ex. B.

On May 7, 2026, Cornell's Board of Trustees announced the creation of an "Ad Hoc Special Committee" to "oversee" CUPD's investigation into the events of April 30, 2026. The statement explained that to "ensure an independent process, President Kotlikoff has recused himself from any involvement in the Board's review or any related university decisions connected to the matter." Taam Decl. ¶ 56; Taam Decl. Ex. 6.

On May 15, 2026, the Ad Hoc Special Committee announced that it had completed its review. The Committee stated that it considered evidence gathered by CUPD, including information gathered at the scene, verified video footage, and a sworn statement from President Kotlikoff. Taam Decl. ¶¶ 58–60; Taam Decl. Ex. 8. The Committee's statement asserted that individuals at the scene had not provided sworn statements to CUPD despite CUPD's repeated attempts to collect them. But Mr. Taam had already provided Officer Carpenter with a written statement on May 5, and Officer Carpenter assured him that the statement would be included in the police report. Taam Decl. ¶¶ 53–60; Taam Decl. Exs. 5, 8.

The Committee concluded that CUPD's investigation was conducted pursuant to existing policies without bias or undue influence. It also concluded that the actions of the individuals who "followed" President Kotlikoff into the parking lot and impeded his ability to leave were

7

inconsistent with university policies governing expressive activity, respectful conduct, safety, and the prohibition of intimidation. Taam Decl. Ex. 8. Nothing in the statement directly addresses Mr. Taam individually or provides any basis for finding *his* conduct was at odds with university policies.

The Committee's statement is notable for what it did not meaningfully address. It did not assess whether President Kotlikoff exercised appropriate judgment in backing up his vehicle while students and community members were nearby; whether he stopped to determine whether anyone had been injured; whether he sought assistance for the individuals who reported contact with the vehicle; or whether his own public statements fairly characterized the incident. Taam Decl. ¶¶ 31–48, 58–60; Taam Decl. Ex. 8. Instead, the Committee focused on the conduct of the individuals who "followed" President Kotlikoff as a group and announced that "appropriate action is being taken against the non-students involved."

At the same time, the Committee acknowledged that CUPD presented the evidence collected to the Tompkins County District Attorney's Office, which determined that no criminal charges were warranted against any individuals involved in the April 30 incident. Taam Decl. ¶ 49; Taam Decl. Ex. 8. The Committee also stated that President Kotlikoff declined to pursue a complaint against the students involved, which would have been required to initiate action under the university's code of conduct. Taam Decl. Ex. 8.

That same day, following the Ad Hoc Committee's report, President Kotlikoff issued a second public statement, titled "Observations on April 30 incident." Gibson Decl. Ex. C. In that statement, he again defended his conduct and framed the individuals involved as responsible for the confrontation.

8

These events matter because President Kotlikoff was not a neutral observer. He was personally involved in the April 30 incident; he is a defendant in this action; and he is the same official alleged in the Complaint to have monitored the March 10 arrest operation and hoped for more arrests of pro-Palestinian attendees. Cornell then relied on a process led by CUPD — also a defendant in this action — to justify continued exclusion of Mr. Taam, one of the non-students involved. Taam Decl. ¶¶ 31-48; Compl. ¶¶ 34-35, 149-155; Taam Decl. Ex. 8.

### F. Cornell Faculty and Campus Organizations Criticized the Board's Process

Cornell faculty and campus organizations publicly criticized the Board's review. On May 28, 2026, the Cornell AAUP, Cornell Courage, CCJP, and CGSU-UE issued a joint statement criticizing the Board for creating a small committee of trustees and naming CUPD as investigators, despite CUPD's existing relationship with President Kotlikoff and CUPD's central role in arresting student protesters. Gibson Decl. Ex. D.

The statement criticized the investigation as "disturbingly rapid" and faulted it for failing to consider whether President Kotlikoff exercised appropriate judgment in backing up his vehicle into students. It also criticized the investigation for failing to consider whether President Kotlikoff checked on the students' well-being, either immediately after his vehicle made contact or after he later claimed to have learned that contact may have occurred. Gibson Decl. Ex. D.

The statement also criticized President Kotlikoff's use of Cornell's communications system. It asserted that President Kotlikoff's May 1 message accused students of physically attacking his vehicle and disparaged them as engaging in harassment and intimidation. According to the statement, subsequent video evidence contradicted President Kotlikoff's description and showed students asking him relevant questions about Cornell's speech policies and disciplinary processes without any inappropriate "attack" on his vehicle or similar conduct.

9

Gibson Decl. Ex. D.

The statement concluded that the investigation appeared designed to craft a favorable narrative in time for commencement and reunion, rather than to provide a serious inquiry into what happened and what could have been done differently. Gibson Decl. Ex. D.

### G. Mr. Taam Asked Cornell to Rescind the April 30 PNG

On or about May 4, 2026, CUPD officers came to Mr. Taam's home and served him with a three-year PNG, allegedly for "trespassing." Mr. Taam did not trespass. The event was open to the public, the walk from Day Hall to the parking lot was open to the public, and Mr. Taam affirms that he was never asked to leave or told he was not welcome. Taam Decl. ¶¶ 50–51; Taam Decl. Ex. 4. The District Attorney refused to press charges.

On May 5, 2026, after receiving the April 30 PNG, Mr. Taam contacted CUPD to obtain permission to enter campus and go to CUPD headquarters to provide a written statement concerning the April 30 incident. Taam Decl. ¶¶ 53–55; Taam Decl. Ex. 5. At CUPD headquarters, Officer William Carpenter asked Mr. Taam to go into an interview room to answer questions but told him he would be waiving his right to counsel. Officer Carpenter would not even allow Mr. Taam to bring in a witness. Mr. Taam declined to be questioned without counsel or a witness present.  Officer Carpenter assured Mr. Taam that his written statement would be included in the police report.  Taam Decl. ¶¶ 53–55; Taam Decl. Ex. 5.

On May 9, 2026, Mr. Taam wrote to CUPD Chief Eric Stickel asking that Cornell immediately rescind the April 30 PNG. Taam Decl. ¶ 57; Taam Decl. Ex. 7.

In that letter, Mr. Taam provided CUPD with his account of the April 30 incident. He explained that he had witnessed what appeared to be President Kotlikoff's vehicle backing out of a parking spot into two pedestrians and running over the foot of one of them. After observing the

10

incident, Mr. Taam approached the vehicle and knocked on the driver-side window in an attempt to alert the driver. Taam Decl. ¶¶ 31–39, 47–49; Taam Decl. Ex. 7.

Mr. Taam further explained that when the driver appeared not to acknowledge him, he moved in front of the parked vehicle to photograph the driver. At that point, the vehicle appeared to move toward him in a manner that caused him to fear for his personal safety and possible serious bodily injury. Mr. Taam then retreated from the immediate vicinity, and the vehicle departed the parking lot. Taam Decl. ¶¶ 34–36; Taam Decl. Ex. 7.

Mr. Taam explained that he had not engaged in violence, threats, obstruction, trespass, or any conduct violating law or Cornell policy, and that he had not been charged with any offense arising from the April 30 incident. Taam Decl. ¶¶ 47–49; Taam Decl. Ex. 7.

Mr. Taam also explained that the April 30 PNG imposed serious personal, professional, and community hardship. He is a Cornell graduate who has long been active in Cornell-related clean-energy projects, seminars, and alumni activities. He and his family planned to attend the 2026 Cornell Reunion, including his wife, his daughter, his son-in-law, and his granddaughter. His wife and daughter are also Cornell graduates. Taam Decl. ¶¶ 78–89; Taam Decl. Ex. 7.

Mr. Taam expressed his concern that the April 30 PNG reflected continued retaliation or discriminatory treatment arising from protected expression and association. He noted that he had previously been issued a PNG in connection with the March 10 Pathways to Peace event, that the charges from that event had been dismissed for lack of evidence, and that a federal civil-rights action was pending challenging viewpoint-based enforcement and exclusion from Cornell property. Taam Decl. ¶¶ 57, 70–77; Taam Decl. Ex. 7.

On May 17, 2026, Mr. Taam emailed the Cornell University Police Department Records Division and formally requested "a copy of the official police report and all associated records

11

regarding the recent parking lot incident involving University President Michael Kotlikoff."

Taam Decl. ¶ 61; Taam Decl. Ex. 9. To date, he has not received it.

### H.  Cornell Refused to Withdraw the Ban and Reissued the PNG on May 20

On May 20, 2026, the Cornell Daily Sun published a guest contribution by Mr. Taam describing what he had witnessed on April 30 and providing photographs. Taam Decl. ¶ 62; Taam Decl. Ex. 10. That same day, CUPD came to Mr. Taam's house for a second time and served him with a different three-year PNG. Taam Decl. ¶ 63; Taam Decl. Ex. 11.

The May 20 PNG did not withdraw or narrow the April 30 ban. It continued the same campus-wide exclusion but supplied a new explanation. Whereas the April 30 PNG had barred Mr. Taam from campus based on purported "trespass" in a parking lot, the May 20 PNG stated that the ban was based on "unsafe behavior" during the April 30 incident. Taam Decl. ¶¶ 63–65; Taam Decl. Ex. 11. Specifically, it asserted:

> On 4/30/2026 at 8:21 p.m., while in the Day Hall parking lot, you restricted a motor vehicle's ability to maneuver while it was in motion. Additionally, by admission, you "knocked" on the vehicle's window while it was in motion, and further intentionally stepped in front of the vehicle impacting its operation.

Taam Decl. Ex. 11.

Two days later, on May 22, 2026, Chief Stickel responded to Mr. Taam's May 9 rescission request. He stated that, "[a]fter careful review," he had "decided to rescind [the April 30, 2026] PNG and issue you a new PNG which details your unsafe behavior on April 30, 2026." He further stated that the new PNG was "in full effect, with no changes to its scope or duration." Taam Decl. ¶ 67; Taam Decl. Ex. 12. This memorandum refers to the April 30 PNG, as reissued on May 20, as the "challenged PNG."

12

Thus, Cornell did not withdraw the campus ban after Mr. Taam provided his account, denied any unlawful conduct, and raised concerns about retaliation. Instead, it served a reissued PNG before responding to his rescission request, then defended that reissuance as the product of "careful review." The result was the same: Mr. Taam remained excluded from Cornell property for the same term, including during the upcoming 2026 Cornell Reunion. Taam Decl. ¶¶ 57, 62–69; Taam Decl. Exs. 7, 10–12.

## I.   The PNG Will Exclude Mr. Taam From Cornell's 2026 Reunion

Cornell's 2026 Reunion takes place from June 4 through June 7, 2026. Mr. Taam planned to attend with his wife, daughter, son-in-law, and granddaughter. His wife and daughter are Cornell graduates. Taam Decl. ¶¶ 87–89. The event is important to the family, and Mr. Taam had especially been looking forward to showing his granddaughter the campus that has been such a big part of the family's life.

The challenged PNG bars Mr. Taam from Cornell property and therefore prevents him from participating in Reunion events with his family and Cornell community. Taam Decl. ¶¶ 4, 63–65, 89; Taam Decl. Ex. 11. Unless temporarily restrained, the PNG will exclude Mr. Taam from a time-sensitive alumni and family event before this Court can adjudicate the legality of Cornell's renewed campus ban in the ordinary course.

The harm is not limited to the upcoming reunion. Cornell owns or controls a large percent of the property throughout Ithaca and the surrounding area, and the PNG does not clearly identify what property is off limits. Mr. Taam's home borders a Cornell nature preserve, one of over 6000 acres of bogs, preserves and other lands operated by Cornell in the area and open to the public. The grocery store Mr. Taam regularly uses is in a Cornell-owned plaza, and he

13

regularly attends Cornell-linked lectures, seminars, networking events, and cultural events. Taam Decl. ¶¶ 78–86, 90–96.

For example, Mr. Taam has served as a mentor and is interested in funding and supporting innovative work in clean energy, which is his field. He is registered to attend an incubator event on June 11, 2026, which Cornell and other area colleges is participating in. ¶¶ 90-91. Similarly, Mr. Taam has been invited to be the guest speaker at a luncheon for the Asian American Studies program (¶ 96). And he and his wife have many friends and colleagues at Cornell, and regularly attend lectures, concerts and other events on campus. The multiyear bans are chilling his speech and impeding his personal and professional activities.

## ARGUMENT

## I.    LEGAL STANDARD

A temporary restraining order is an extraordinary but appropriate remedy where the movant establishes: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent emergency relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the Second Circuit, a movant seeking a prohibitory injunction ordinarily must show "irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal citations omitted.) The "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not

14

to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *See, e.g., F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 815–19 (2d Cir.1979).

Where a plaintiff seeks to enjoin governmental action taken pursuant to a statute, regulation, or other official policy, courts generally require a showing of likelihood of success on the merits. *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). But where the injunction sought is prohibitory and preserves the status quo, the "serious questions" standard remains available. *Citigroup*, 598 F.3d at 35–38.

A plaintiff establishes irreparable harm where the challenged action chills or burdens First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Second Circuit likewise recognizes that alleged constitutional violations, particularly First Amendment violations, may support a finding of irreparable harm. *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349–50 (2d Cir. 2003).

## II.   THE REQUESTED RELIEF IS PROPERLY BEFORE THIS COURT

The Complaint already pleads a First Amendment claim for viewpoint discrimination, retaliatory arrest, and prior restraint. Compl. ¶¶ 182–191. It also seeks injunctive relief barring Defendants from retaliating against students, faculty, or community members for exercising First Amendment rights in connection with Gaza or Palestine. Compl., Prayer for Relief ¶ g. The challenged PNG is not a separate controversy. It is a continuation of the same course of viewpoint-based exclusion alleged in the Complaint: Cornell and CUPD using arrest threats, criminal process, and campus-wide PNGs to punish pro-Palestinian expression. Compl. ¶¶ 10–14, 62, 149–155, 167–168, 182–191; Taam Decl. ¶¶ 70–77.

15

In any event, Rule 15(d) permits supplementation based on events that occurred after the filing of the Complaint. If Defendants contend that the April 30 PNG must be pleaded separately before final injunctive relief may issue, Mr. Taam will seek leave to supplement. That anticipated procedural step does not bar temporary relief where the challenged conduct is ongoing; imminent harm is undisputed, and the new PNG is closely related to the claims already pleaded.

### III.    MR. TAAM RAISES A SERIOUS QUESTION GOING TO THE MERITS AND IS LIKELY TO SUCCEED ON HIS FIRST AMENDMENT RETALIATION CLAIM

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in protected speech or conduct; (2) the defendant took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *See Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). A plaintiff need not show that his speech was the sole reason for the adverse action; it is enough to show that protected conduct was a substantial or motivating factor. *See Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal citation omitted).

### A.  Mr. Taam Engaged in Protected Activity

Mr.        Taam's        protected        activity        is        extensive.

First, his March 10 statement at the Pathways to Peace event — "you turned it into a prison" — was political speech concerning Israel's treatment of Gaza. Speech on public affairs, criticism

16

of government policy, and expression concerning war, occupation, human rights, and university discipline lie at the core of the First Amendment. Compl. ¶¶ 130–133; Taam Decl. ¶¶ 71-75. Indeed, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, [and] is entitled to special protection." *Dongguk Univ. v Yale Univ.,* 734 F.3d 113, 127 (2013).

Second, Mr. Taam brought this civil rights action challenging Cornell and CUPD's arrests, prosecutions, and PNGs. Litigation challenging government action is protected petitioning activity under the First Amendment. Compl. ¶¶ 1–14, 182–191.

Third, Mr. Taam's May 9 letter requesting rescission of the PNG was protected petitioning activity. He challenged a campus-exclusion order, asserted his rights, requested the factual basis and evidence relied upon, requested any available appeal procedure, and sought preservation of records. Taam Decl. ¶ 57; Taam Decl. Ex. 7. See, e.g., *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals,* 282 F.3d 83 (2002).

Fourth, Mr. Taam's April 30 conduct was intertwined with protected expression, association, and documentation of a matter of public concern. He had earlier offered President Kotlikoff a book concerning human rights violations against Palestinians. He witnessed what appeared to be a vehicle incident involving the president of the university and students asking questions about speech policies and discipline. He tried to alert the driver and then sought to photograph the driver. Taam Decl. ¶¶ 6–16, 17–28, 31–39, 47–49. The First Amendment protects the right to criticize public officials, university officials exercising state-delegated authority, and law enforcement. It also protects recording and documentation of matters of public concern, particularly where police or officials or public safety are involved. *Rupp v. City of Buffalo,* 91 F. 4th 623 (2024) ("[s]peech on matters of public concern is at the heart of First Amendment

17

protection" and includes topics of political, social, or other concern to the community, such as public safety and welfare.")

## B. The Challenged PNG Is an Adverse Action That Would Chill a Person of Ordinary Firmness

The challenged PNG is a serious adverse action. It bars Mr. Taam, a Cornell graduate, from Cornell property. Taam Decl. ¶¶ 4, 50–51, 63–65; Taam Decl. Exs. 4, 11. It prevents him from attending lectures, seminars, alumni events, community events, and family events on campus. Taam Decl. ¶¶ 78–86, 90–97. It chills his willingness to participate in Cornell community life, to engage with students and faculty, to attend events concerning Israel and Palestine, and to document or criticize university officials. Violation of the PNG may expose him to police action or trespass enforcement.

This is more than *de minimis* inconvenience. Cornell's campus is central to the civic, educational, professional, and social life of Ithaca and to Mr. Taam's identity as a graduate. The PNG excludes him from Cornell's 2026 Reunion — a time-sensitive alumni event that will occur from June 4 through June 7, 2026 — and disrupts his family's planned participation. Taam Decl. ¶¶ 87–89. Such a broad exclusion would chill a person of ordinary firmness from continuing to speak, petition, associate, and document matters involving Cornell.

## C. The Record Strongly Supports Retaliatory Motive

The causation evidence is more than sufficient at this emergency stage.

First, the challenged PNG cannot be separated from the earlier retaliation alleged in this action. Mr. Taam was first banned from Cornell property after an arrest unsupported by evidence on March 10, 2025. His criminal charge was dismissed outright at his first court appearance for lack of evidence. Cornell nevertheless maintained the original PNG. Compl. ¶¶ 130–138; Taam

18

Decl. ¶¶ 70–77.Then, on April 30, 2026, while this lawsuit was pending, Cornell issued a second campus-wide ban after Mr. Taam witnessed and documented an incident involving President Kotlikoff. Taam Decl. ¶¶ 4, 50–51, 63–65; Taam Decl. Exs. 4, 11. The police would not even press charges as Mr. Taam engaged in no wrongdoing.

Second, Cornell continued that second ban after Mr. Taam engaged in protected petitioning activity. On May 9, 2026, Mr. Taam requested rescission of the April 30 PNG, invoked the pending federal lawsuit, raised retaliation concerns, requested evidence and any appeal procedure, and demanded preservation of records. Cornell responded not by withdrawing the ban, but by reissuing the April 30 PNG on May 20, 2026 with additional detail and "no changes to its scope or duration." Taam Decl. ¶¶ 53–69; Taam Decl. Exs. 5, 7, 10–12.

Third, the April 30, 2026, incident involved President Kotlikoff personally — the same official who, according to the Complaint, was monitoring the March 10, 2025, arrest operation and "hoping" for more arrests. Compl. ¶¶ 34–35, 149–155; Taam Decl. ¶¶ 31–48. The challenged PNG thus arises from a dispute involving a defendant in this case and one of his critics. That conflict of interest supports an inference of retaliatory motive and pretext.

The inference of pretext is reinforced by President Kotlikoff's own public statements. The day after the April 30, 2026, incident, before any neutral adjudication, President Kotlikoff used Cornell's official communications system to characterize the incident as "harassment and intimidation." He then issued a second public statement on May 15 defending his conduct and again framing the individuals involved as responsible for the confrontation. Taam Decl. ¶¶ 40–44; Taam Decl. Ex. 2; Gibson Decl. Exs. A–C. Cornell's later decision to continue the PNG adopted that same framing, even though President Kotlikoff was personally involved in the incident, is a defendant in this case, and is alleged in the Complaint to have taken part in the

19

earlier March 10 enforcement operation. That sequence supports the inference that the PNG was not the product of neutral safety assessment, but of institutional retaliation and narrative control.

Fourth, Cornell's own Board statement supports an inference of selective punishment. Taam Decl. ¶¶ 56–60; Taam Decl. Exs. 6, 8.The Board acknowledged that the Tompkins County District Attorney determined that no criminal charges were warranted. The Board further stated that President Kotlikoff declined to pursue student conduct charges. Yet it announced that "appropriate action" would be taken against non-students. Mr. Taam is a non-student graduate, a named plaintiff, and a critic of Cornell's treatment of pro-Palestinian expression. The Board's statement therefore shows that after criminal charges were rejected and student discipline was avoided, Cornell used PNG enforcement against non-students as the remaining punitive mechanism.

Fifth, the process leading to the issuance of the challenged PNG was not neutral. Taam Decl. ¶¶ 53–60; Taam Decl. Exs. 5, 8. The Board relied on evidence gathered by CUPD, including a sworn statement from President Kotlikoff, and used independent legal counsel only to evaluate the independence and integrity of CUPD's investigation. But CUPD is a defendant in this case. CUPD issued and enforced the prior PNGs. CUPD officers carried out the March 10 arrests challenged here. CUPD was therefore not a neutral investigator of an incident involving President Kotlikoff and a named plaintiff in this case.

Sixth, the inference of pretext is strengthened by the one-sided nature of Cornell's review and President Kotlikoff's public statements. Taam Decl. ¶¶ 31–48, 53–60; Taam Decl. Ex. 8; Gibson Decl. Ex. D. The Board's statement faulted the individuals who "followed" President Kotlikoff into the parking lot and apparently even those like Mr. Taam, who was merely present and witnessed and tried to document the incident, but did not meaningfully address President

20

Kotlikoff's own conduct: his decision to back up while people were near the vehicle, whether he stopped to check whether anyone had been injured, and his use of Cornell's official communications system, the day after the incident, to accuse the students of "harassment and intimidation." Kotlikoff then issued a second public statement on May 15 defending his conduct and again framing the individuals involved as responsible for the confrontation. A process that scrutinizes only the president's critics, while declining to assess the president's own conduct in an incident involving his vehicle, is not a neutral safety assessment. It is evidence of institutional self-protection and retaliatory pretext.

Seventh, Cornell faculty and campus organizations publicly criticized the April 30 review as a "sham," noting that the Board placed blame on students and critics while failing to assess President Kotlikoff's own conduct. Gibson Decl. Ex. D. This public criticism is consistent with the inference that Cornell's process was designed to protect institutional leadership and punish critics rather than neutrally assess facts.

Eighth, the Complaint alleges a broader pattern of viewpoint-based enforcement against pro-Palestinian expression. It alleges that CUPD officers identified attendees wearing keffiyehs as people to watch; that arrestees were charged despite lack of probable cause; that pro-Israel disruption and physical aggression were not punished in the same way; that Cornell issued PNGs to arrestees; and that President Kotlikoff, through Ms. Hopkins, hoped for more arrests. Compl. ¶¶ 10–14, 62, 69–73, 149–155, 167–168, 182–19; Taam Decl. ¶¶ 70–77. This pattern evidence reinforces the conclusion that the challenged PNG is not a neutral safety measure but part of the same retaliatory enforcement scheme.

At a minimum, Mr. Taam has raised serious questions going to the merits of his First Amendment retaliation claim. The hardships tip sharply in his favor because the challenged PNG

21

will exclude him from imminent Reunion events and chill his constitutional rights, while the requested relief merely requires Cornell to treat him like other alumni and members of the public subject to generally applicable, viewpoint-neutral rules.

### IV.    MR. TAAM IS LIKELY TO SUFFER IRREPARABLE HARM ABSENT EMERGENCY RELIEF

The irreparable harm to Mr. Taam is clear and imminent.

Cornell's 2026 Reunion activities begin on June 4, 2026, and continue through June 7, 2026. Mr. Taam and his family planned to attend. He, his wife and daughter are all Cornell graduates; his son-in-law and granddaughter also planned to participate. The challenged PNG will bar Mr. Taam from taking part in this family and alumni event unless the Court acts before June 4. Taam Decl. ¶¶ 87–89.

The injury is not compensable through damages. The 2026 Cornell Reunion is a time-sensitive event. Once it occurs without Mr. Taam, the opportunity to participate with his family and Cornell community cannot be restored. Nor is the injury merely social. The PNG excludes Mr. Taam from expressive, associational, educational, professional, and alumni activities on Cornell's campus. It chills his participation in public events, his association with students and faculty, and his willingness to continue criticizing Cornell's treatment of pro-Palestinian expression. Taam Decl. ¶¶ 78–86, 90–97.

The challenged PNG also causes continuing harm beyond the 2026 Cornell Reunion. Cornell owns or controls property throughout Ithaca and the surrounding area, and the PNG does not clearly identify what property is off limits. Mr. Taam's home borders a Cornell nature preserve, the grocery store he regularly uses is in a Cornell-owned plaza, and he regularly attends Cornell-linked lectures, seminars, networking events, and cultural events. Taam Decl. ¶¶ 78–86,

22

90–96.

The constitutional injury is independently irreparable. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)  Mr. Taam's exclusion is ongoing, direct, and immediate. Taam Decl. ¶¶ 78–97. Without emergency relief, Cornell will accomplish the very retaliation this suit seeks to prevent—excluding a named plaintiff from campus and community life because he engaged in protected speech, protected petitioning, and protected criticism of Cornell leadership.

## V.    THE BALANCE OF EQUITIES TIPS SHARPLY IN MR. TAAM'S FAVOR

The balance of equities favors temporary relief.

Mr. Taam faces exclusion from Cornell's 2026 Reunion, interference with family and alumni association, and ongoing chill of First Amendment activity. He has already suffered an arrest unsupported by evidence; a criminal charge dismissed for lack of evidence, and a prior PNG that Cornell refused to rescind. The challenged PNG preserves that exclusion under a different rationale, after he sued and requested rescission. Taam Decl. ¶¶ 70–89, 93–97.

By contrast, Cornell will suffer no cognizable harm from temporary relief. Mr. Taam does not seek an order allowing him to violate generally applicable rules or interfere with anyone's safety. The requested order can expressly require him to follow all viewpoint-neutral rules applicable to alumni and the public. Cornell remains free to enforce lawful, viewpoint-neutral rules against actual threats, violence, obstruction, or trespass. What Cornell may not do is enforce a retaliatory campus ban against a named civil-rights plaintiff while this Court evaluates its legality.

The narrowness of the requested relief is important. Mr. Taam seeks relief for himself. He

23

seeks temporary non-enforcement of a specific PNG. In the alternative, he seeks only enough relief to attend Reunion 2026 and other events open to alumni or the public while complying with viewpoint-neutral rules. This limited order will not interfere with Cornell's ability to operate its campus, protect safety, or manage events.

## VI.    THE PUBLIC INTEREST SUPPORTS EMERGENCY RELIEF

The public interest favors protecting constitutional rights and preventing retaliatory enforcement. It also favors ensuring that universities and police departments exercising state-delegated authority do not use exclusion orders to punish disfavored political viewpoints or litigation activity.

This case concerns speech on matters of profound public importance: Israel, Palestine, university governance, protest discipline, and the use of police power on campus. The public has an interest in ensuring that such speech is not chilled through arrests, criminal charges, and campus-wide exclusion orders or vehicular intimidation. The public also has an interest in meaningful judicial review before a named plaintiff is excluded from a major alumni event by the very institution and police department he has sued for retaliatory and viewpoint-discriminatory enforcement.

Temporary relief will not undermine public safety. It will preserve the status quo necessary for judicial review and allow Mr. Taam to attend Reunion under the same neutral rules applicable to other alumni and members of the public.

## VII.    THE REQUESTED RELIEF IS NARROW AND PROPER

Mr. Taam respectfully requests an order temporarily restraining Defendants from enforcing the challenged PNG against him pending a preliminary-injunction hearing.

In the alternative, the Court should temporarily restrain Defendants from enforcing the

24

PNG to prevent Mr. Taam from attending Cornell Reunion 2026, alumni events, lectures, seminars, public events, and other Cornell events open to alumni or the public, provided he complies with generally applicable, viewpoint-neutral rules of conduct.

The Court should also order Defendants to show cause why a preliminary injunction should not issue and set an expedited hearing. Given the imminent June 4 start of the 2026 Cornell Reunion, Plaintiff further requests expedited production of the factual basis and evidence for the challenged PNG including: the PNG; CUPD incident reports; all verified video; body-worn camera footage; President Kotlikoff's sworn statement; communications concerning the decision to re-issue the April 30 PNG on May 20; and communications concerning the Board's decision that "appropriate action" would be taken against non-students. Taam Decl. Ex. 8.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff Milton Taam respectfully requests that this Court grant his emergency motion for a temporary restraining order; enjoin Defendants from enforcing the challenged PNG against him pending a preliminary-injunction hearing; order Defendants to show cause why a preliminary injunction should not issue; and grant such other and further relief as the Court deems just and proper.

Dated: June 2, 2026
Ithaca, New York

Respectfully submitted,


*/s/ Sujata S. Gibson*
**Sujata S. Gibson**
*Attorney for Plaintiff*
Gibson Law Firm
PLLC 120 Buffalo Street, Suite 2

25

Ithaca, NY 14850
(607) 327-4125
sujata@gibsonfirm.law

COHEN&GREEN PLLC

By: **Elena L. Cohen**
**Sarah Kunstler,**
**Of Counsel**
1639 Centre Street
Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
elena@femmelaw.com

Counsel for Plaintiff Milton Taam

26

## COUNSEL CERTIFICATION REGARDING NOTICE

Pursuant to Federal Rule of Civil Procedure 65(b), counsel for Plaintiff Milton Taam

certifies that this application is being made with notice to Defendants. Counsel served or will

serve Defendants through CM/ECF and by email to counsel of record. Because Cornell Reunion

2026 begins on June 4, 2026, Plaintiff respectfully requests expedited consideration.


Dated: June 2, 2026
Ithaca, New York

/s/ Sujata S. Gibson
**Sujata S. Gibson**
*Attorney for Plaintiff*
Gibson Law Firm
PLLC 120 Buffalo Street, Suite 2
Ithaca, NY 14850
(607) 327-4125
sujata@gibsonfirm.law

COHEN&GREEN PLLC

By: **Elena L. Cohen**
**Sarah Kunstler,**
**Of Counsel**
1639 Centre Street
Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
elena@femmelaw.com

Counsel for Plaintiff Milton Taam

1